1 | David S. Kupetz (CA Bar No. 125062)
  |    *dkupetz@sulmeyerlaw.com*
2 | Steven F. Werth (CA Bar No. 205434)
  |    *swerth@sulmeyerlaw.com*
3 | **Sulmeyer**Kupetz
  | A Professional Corporation
4 | 333 South Hope Street, Thirty-Fifth Floor
  | Los Angeles, California  90071-1406
5 | Telephone: 213.626.2311
  | Facsimile: 213.629.4520
6 |
7 | Attorneys for eStyle, Inc.,
  | Debtor and Debtor in Possession
8 |

*(left margin, vertical text)* **Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

9

# UNITED STATES BANKRUPTCY COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

## LOS ANGELES DIVISION

12

| | |
|---|---|
| 13 In re | Case No.  2:08-bk-13518-SB |
| 14 ESTYLE, INC., a Delaware corporation, | Chapter 11 |
| 15 dba babystyle, Cadeau, and Cadeau Designs, | **FOURTH AMENDED DISCLOSURE STATEMENT DESCRIBING THIRD AMENDED CHAPTER 11 PLAN; DECLARATION OF JAMES K. BAER** |
| 16       Debtor. | |
| 17 | **Disclosure Statement Hearing** |
| 18 | DATE:   July 14, 2009 |
| 19 | TIME:   2:00 p.m. |
| 20 | PLACE: U.S. Bankruptcy Court |
| 21 Tax Id # 95-4712564 |        Courtroom 1575 |
| |        255 East Temple Street |
| |        Los Angeles, CA  90012 |
| 22 | **Plan Confirmation Hearing** |
| 23 | |
| 24 | DATE:   October 6, 2009 |
| 25 | TIME:   2:00 p.m. |
| | PLACE: U.S. Bankruptcy Court |
| 26 |        Courtroom 1575 |
| 27 |        255 East Temple Street |
| 28 |        Los Angeles, CA  90012 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 2

    A.   Purpose of This Document .................................................................. 2

    B.   Deadlines for Voting and Objecting; Date of Plan Confirmation
        Hearing ................................................................................................. 3

        1.   Time and Place of the Confirmation Hearing .......................... 3

        2.   Deadline For Voting For or Against the Plan ........................... 3

        3.   Deadline For Objecting to the Confirmation of the Plan ........... 4

        4.   Identity of Person to Contact for More Information Regarding
        the Plan. .................................................................................. 4

    C.   Disclaimer ........................................................................................... 4

II.   BACKGROUND ........................................................................................... 5

    A.   Description and History of the Debtor's Business ................................ 5

    B.   Principals/Affiliates of the Debtor's Business ..................................... 5

    C.   Management of the Debtor Before and After the Bankruptcy ............... 6

    D.   Events Leading to Chapter 11 Filing .................................................. 6

    E.   Significant Events During the Bankruptcy ........................................... 7

        1.   Bankruptcy Proceedings .......................................................... 7

            a.   First Day Motions Relating to Business Operations ................. 7

            b.   Cash Collateral ....................................................................... 8

            c.   Store Closing Sales ............................................................... 10

            d.   Sale Of Assets Of Estate ...................................................... 10

            e.   Assignment of Real Property Leases ..................................... 11

            f.   Global Stipulation .................................................................. 13

    Allowance of Bridge Lenders' Claims and Interim Distribution. ...................... 14

    Subordination Under the Plan. ....................................................................... 14

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Subordination to Allow for Guaranteed Payment of General Unsecured
    Claims Under the Plan. ............................................................................ 14

Continuance of Existing Subordination Agreement Pending the Effective
    Date of the Plan ...................................................................................... 14

Subordination to Post-Confirmation Reserve. .......................................... 15

Avoidance Claims. ....................................................................................... 15

        The Court has approved the employment of the following
            professionals: ................................................................................... 16

        General Bankruptcy Counsel. ............................................................... 16

        Special Corporate Counsel. .................................................................. 16

        Financial Advisor. ................................................................................. 16

        Investment Banker. ............................................................................... 17

        Accountant. .......................................................................................... 17

        Unsecured Creditors' Committee – Employment of Counsel. ............... 17

    2.    Other Legal Proceedings ................................................................ 18

    3.    Actual and Projected Recovery of Preferential or Fraudulent
          Transfers ........................................................................................ 18

    4.    Procedures Implemented to Resolve Financial Problems .............. 19

    5.    Current and Historical Financial Conditions ................................... 20

III.    SUMMARY OF THE PLAN OF REORGANIZATION ........................... 21

    A.    What Creditors and Interest Holders Will Receive Under The
          Proposed Plan ................................................................................ 21

    B.    Unclassified Claims ......................................................................... 21

        1.    Administrative Expenses ........................................................ 21

        2.    Priority Tax Claims ................................................................. 23

    C.    Classified Claims and Interests ....................................................... 27

        1.    Classes of Secured Claims .................................................... 27

        2.    Classes of Priority Unsecured Claims .................................... 28

        3.    Class of General Unsecured Claims ....................................... 29

        4.    Class of Equity Interest Related Claims ................................. 29

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

|   |   |   | 5. | Classes of Interest Holders | 30 |
| D. |   |   |   | Means of Effectuating the Plan | 31 |
|   |   | 1. |   | Funding for the Plan | 31 |
|   |   | 2. |   | Post-confirmation Management | 31 |
|   |   | 3. |   | Disbursing Agent | 32 |
| E. |   |   |   | Risk Factors | 33 |
| F. |   |   |   | Other Provisions of the Plan | 33 |
|   |   | 1. |   | Executory Contracts and Unexpired Leases | 33 |
|   |   |   | a. | Assumptions | 33 |
|   |   |   | b. | Rejections | 33 |
|   |   | 2. |   | Changes in Rates Subject to Regulatory Commission Approval | 34 |
|   |   | 3. |   | Retention of Jurisdiction | 34 |
| G. |   |   |   | Tax Consequences of Plan | 34 |
| H. |   |   |   | Federal Income Tax Treatment of the Disbursing Agent | 34 |
|   |   | 1. |   | Federal Income Tax Classification and Taxation of the Disbursing Agent. | 34 |
|   |   | 2. |   | Tax Reporting. | 38 |
| I. |   |   |   | Federal Income Tax Consequences to Debtor | 39 |
|   |   | 1. |   | Sale of Business. | 39 |
|   |   | 2. |   | Transfer of Assets to the Disbursing Agent. | 40 |
|   |   | 3. |   | Dissolution of Debtor. | 41 |
|   |   | 4. |   | Utilization of the Debtor's Net Operating Losses. | 41 |
|   |   | 5. |   | Reduction of Debtor's Indebtedness. | 42 |
|   |   | 6. |   | Alternative Minimum Tax | 43 |
| J. |   |   |   | Tax Consequences to Creditors | 44 |
|   |   | 1. |   | Transfer of Assets to the Disbursing Agent. | 44 |
|   |   | 2. |   | Distributions from DOF. | 45 |
|   |   | 3. |   | Claims Satisfied with Payments | 45 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[SWERTH\BANKR\527168.2]

| | | | |
|---|---|---|---|
| | | a. | Gain/Loss on Exchange ........................................ 46 |
| | | b. | Tax Basis and Holding Period of Items Received ................ 46 |
| | | c. | Determination of Character of Gain ....................... 46 |
| | 4. | | Receipt of Interest ............................................ 47 |
| | 5. | | Other Tax Considerations ................................... 47 |
| | | a. | Market Discount ............................................ 47 |
| | | b. | Withholding ................................................ 48 |
| K. | | | Tax Consequences to Stockholders ....................... 48 |
| IV. | | | CONFIRMATION REQUIREMENTS AND PROCEDURES ................ 49 |
| | A. | | Who May Vote Or Object ...................................... 49 |
| | | 1. | Who May Object to Confirmation of the Plan ................ 49 |
| | | 2. | Who May Vote to Accept/Reject the Plan ................... 49 |
| | | | a. What Is an Allowed Claim/Interest ............... 50 |
| | | | b. What Is an Impaired Claim/Interest ............... 50 |
| | | 3. | Who is Not Entitled to Vote ............................. 51 |
| | | 4. | Who Can Vote in More than One Class ................. 51 |
| | | 5. | Votes Necessary to Confirm the Plan .................. 51 |
| | | 6. | Votes Necessary for a Class to Accept the Plan ........... 52 |
| | | 7. | Treatment of Nonaccepting Classes ...................... 52 |
| | | 8. | Request for Confirmation Despite Nonacceptance by Impaired Class(es) ................................................ 52 |
| | B. | | Liquidation Analysis ........................................ 52 |
| | C. | | Feasibility ................................................ 55 |
| V. | | | EFFECT ON CONFIRMATION OF PLAN ........................ 56 |
| | A. | | No Discharge .............................................. 56 |
| | B. | | Revesting of Property in the Debtor ..................... 56 |
| | C. | | Modification of the Plan ................................ 56 |
| | D. | | Post-Confirmation Status Report ....................... 57 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1     E.     Quarterly Fees................................................................................57

2     F.     Post-Confirmation Conversion/Dismissal ...................................57

3     G.     Final Decree..................................................................................58

4     DECLARATION OF JAMES K. BAER ...........................................................59

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# I.

## INTRODUCTION

eStyle, Inc. ("eStyle" or the "Debtor"), a Delaware corporation, is the debtor in possession in the above-captioned Chapter 11 bankruptcy case. On March 19, 2008, the Debtor commenced the bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PROPOSED PLAN.

This is a liquidating plan. In other words, the proponent seeks to accomplish payments under the Plan by distributing cash on hand in the estate and the post-confirmation estate as well as any remaining assets that may be liquidated and/or claims that may be recovered for the benefit of the estate and/or the post-confirmation estate. The Effective Date of the proposed Plan is 30 days after entry of the Court's order confirming the Plan (the "Effective Date").

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1       (3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS

2 DURING BANKRUPTCY,

3       (4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE

4 WHETHER OR NOT TO CONFIRM THE PLAN,

5       (5)     WHAT IS THE EFFECT OF CONFIRMATION, AND

6       (6)     WHETHER THIS PLAN IS FEASIBLE.

7       This Disclosure Statement cannot tell you everything about your rights.

8 You should consider consulting your own lawyer to obtain more specific advice on how

9 this Plan will affect you and what is the best course of action for you.

10       Be sure to read the Plan as well as the Disclosure Statement.  If there are

11 any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions

12 will govern.

13       The Code requires a Disclosure Statement to contain "adequate

14 information" concerning the plan.  The Bankruptcy Court ("Court") has approved this

15 document as an adequate Disclosure Statement, containing enough information to

16 enable parties affected by the Plan to make an informed judgment about the Plan.  Any

17 party can now solicit votes for or against the Plan.

18    **B.**    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

19       THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN

20 THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN

21 ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER

22 CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND

23 ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

24    **1.**    **Time and Place of the Confirmation Hearing**

25       The hearing where the Court will determine whether or not to confirm the

26 Plan will take place on October 6, 2009, at 2:00 p.m. in Courtroom 1575, United States

27 Bankruptcy Court, 255 East Temple Street, Los Angeles, California 90012.

28    **2.**    **Deadline For Voting For or Against the Plan**

1   If you are entitled to vote, it is in your best interest to timely vote on the

2   enclosed ballot and return the ballot in the enclosed envelope to the attention of the

3   Debtor's bankruptcy counsel, SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los

4   Angeles, CA 90071, attention: Debbie Perez.

5   Your ballot must be received by 5:00 p.m., Pacific Time, on September 25,

6   2009, or it will not be counted.

7   **3.     Deadline For Objecting to the Confirmation of the Plan**

8   Objections to the confirmation of the Plan must be filed with the Court and

9   served upon counsel to the Debtor, to the attention of David Kupetz, SulmeyerKupetz,

10   333 South Hope Street, 35th Floor, Los Angeles, CA 90071, email:

11   dkupetz@sulmeyerlaw.com, by September 25, 2009.

12   **4.     Identity of Person to Contact for More Information Regarding**

13   **the Plan.**

14   Any interested party desiring further information about the Plan should

15   contact counsel for the Debtor, in writing, to the attention of Debbie Perez at

16   SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los Angeles, CA 90071, e-mail:

17   dperez@sulmeyerlaw.com, or by calling (213) 626-2311.  Parties may also contact

18   counsel for the Official Committee of Unsecured Creditors, attention Craig G. Margulies,

19   Landsberg Margulies LLP, 16030 Ventura Blvd., Ste. 470, Encino, CA 91436-2731, e-

20   mail: cmargulies@lm-lawyers.com.

21   **C.     Disclaimer**

22   The financial data relied upon in formulating the Plan is based on financial,

23   business, and accounting data contained in books and records provided by the Debtor.

24   The information contained in this Disclosure Statement is provided by James K. Baer, the

25   responsible officer of the Debtor.  The Plan Proponent represents that everything stated

26   in the Disclosure Statement is true to the Proponent's best knowledge.  The Court has

27   not yet determined whether or not the Plan is confirmable and makes no

28   recommendation as to whether or not you should support or oppose the Plan.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

II.

## BACKGROUND

**A.    Description and History of the Debtor's Business**

The Debtor is a corporation.

The Debtor was in the business of selling maternity, baby and kids apparel, and toys, gear and related products direct to the consumer. As of the Petition Date, eStyle sold its merchandise at 23 retail stores (21 babystyle and two Cadeau stores), as well as through its babystyle.com website and a direct mail program. eStyle sold product under the babystyle and Cadeau private labels, and under leading brands. eStyle also sold its Cadeau-brand product to wholesale accounts. The Debtor ceased to conduct business on July 21, 2008, when substantially all of the Debtor's assets were sold to TRS Acquisition Subsidiary, Inc. ("TRS") pursuant to a Court-approved sale.

The Debtor started its business in October 1999. The babystyle.com website, which was operated by the Debtor, was launched in October 1999. The Debtor opened its first retail store in November 2002.

**B.    Principals/Affiliates of the Debtor's Business**

1.    Robert S. Kelleher, former CEO and Director (no longer employed and no longer being compensated).

2.    Emilia Fabricant, former President and Merchandising Officer, holder of less than 1% of equity (no employed and no longer being compensated).

3.    Yvonne Besvold, former CFO and Secretary (no longer employed and no longer being compensated).

4.    Jerry Gallagher, director (no longer being compensated) and representative of Oak Investment Partners IX and related entities, which have 29.97% equity in the Debtor.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1       5.     Steven Lebow, director (no longer being compensated) and

2       representative of GRP II Partners, L.P. and related entities, which

3       have 38.59% equity in the Debtor.

4       6.     Dennis Eck, director (no longer being compensated), 1.2% equity

5       holder.

6       7.     Saints Capital II, L.P., 5.95% equity holder.

7       8.     Moussescapade, L.P., 6.4% equity holder.

8    **C.**    **Management of the Debtor Before and After the Bankruptcy**

9       Prior to the Petition Date, the Debtor's key management consisted of

10  Robert S. Kelleher, Emilia Fabricant, and Yvonne Besvold.  During the bankruptcy case,

11  these persons continued their management duties until Mr. Kelleher resigned a few

12  months after the commencement of the case.  Ms. Besvold's employment ceased a few

13  months after the commencement of the case as well.  Ms. Fabricant continued to serve in

14  her role as President of the Debtor until the ongoing business assets of the Debtor were

15  sold pursuant to Court order.  Thereafter, pursuant to the appointment of the Debtor's

16  board of directors and Court approval, James K. Baer became the responsible officer of

17  the Debtor and continues to serve in that capacity.

18    **D.**    **Events Leading to Chapter 11 Filing**

19       Here is a brief summary of the circumstances that led to the filing of this

20  Chapter 11 case:

21       eStyle started as an ecommerce business in 1999 and added a direct mail

22  catalog approximately one year later.  In 2002, the Debtor opened its first retail store.  In

23  2004, eStyle made a decision to significantly expand its retail store presence, and by

24  early 2005 had negotiated leases that resulted in the opening of nine new stores in 2005

25  and three new stores in 2006.  The store expansion required significant changes in

26  systems, infrastructure and business processes, many of which were only addressed

27  concurrently with the store expansion, which negatively affected operating results.

28  During this period (2004-2006), the Debtor suffered from a lack of consistent

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  merchandise direction and insufficient merchandising disciplines, at a time when more

2  retailers were competing in this category.

3      During 2006 and 2007, the Debtor took steps to complete a repositioning of

4  the business from an e-commerce business to a multi-channel retailer positioned to

5  support further new store growth.  Changes were made to address the merchandise

6  leadership, merchandising disciplines and infrastructure requirements, but continued

7  operating losses during this repositioning put severe pressure on eStyle's cash

8  availability.

9      The impact of general weakness in the economy and declines in mall traffic

10  negatively impacted sales in the Debtor's retail stores.  Poor performance of some of the

11  Debtor's stores negatively impacted the Debtor's operating results.  Moreover, the Debtor

12  was unsuccessful in its efforts to obtain additional financing to support its efforts to

13  complete the repositioning.  Recognizing the need to stabilize its operating results and

14  eliminate losses, the Debtor took cost cutting measures, including staff reductions and

15  identifying stores to be closed.  Further, the Debtor altered certain aspects of its

16  operation in order to increase sales productivity and enhance sales.  These efforts did not

17  stem the Debtor's ongoing operating losses.  Ultimately, it was necessary for the Debtor

18  to commence its chapter 11 case in order to allow the Debtor the opportunity to maximize

19  value under the circumstances by preserving a going concern to the extent feasible.

20      **E.    Significant Events During the Bankruptcy**

21          **1.    Bankruptcy Proceedings**

22      The following is a chronological list of significant events which have

23  occurred during this case:

24              **a.    First Day Motions Relating to Business Operations**

25      In order to minimize disruption to the Debtor's business operations and any

26  resulting harm to the value of the Debtor's business and bankruptcy estate, the Debtor

27  filed various "first-day" motions to protect the interests of the estate, including motions or

28  (1) for authority to pay and honor employee priority prepetition wages, benefits and

1  related claims, (2) for authority to comply with and honor customer programs and claims,

2  (3) to address the issue of adequate assurance of payment of utilities pursuant to § 366

3  of the Bankruptcy Code and to protect the estate in that regard, (4) to protect the estate's

4  interests with respect to merchant credit card processors, (5) to protect the interests of

5  the estate with respect to common carriers/shippers, warehousers and customs, and (6)

6  to allow the Debtor to maintain its existing cash management and banking system.  The

7  Court entered orders approving these motions on March 25, 2008, which allowed the

8  Debtor to continue its business operations without significant disruption, preventing what

9  otherwise could have been a substantial loss in value of the bankruptcy estate.

10  **b.    Cash Collateral**

11  Without the use of cash collateral, the Debtor would have been forced to

12  cease its business operations, the opportunity to explore, assess, and implement

13  reorganization and/or going concern sale alternatives available to the Debtor would have

14  been immediately lost, the value of the Debtor's assets would have been substantially

15  and irreparably harmed, and all of the Debtor's employees would have lost their jobs.

16  Upon the commencement of the Debtor's chapter 11 case, Wachovia Capital Finance

17  Corporation (Western), the senior secured creditor of the Debtor as of the petition date

18  ("Wachovia") opposed the Debtor's use of cash collateral.  Wachovia was owed

19  approximately $2,300,000 as of the date of the commencement of the Debtor's chapter

20  11 case.  Moreover, Wachovia asserted that it was undersecured.  The Debtor prepared

21  the necessary pleadings (motions, notices, orders, declarations, etc. . . .) to be filed with

22  the Court in order to obtain authorization to use cash collateral.  The Debtor's

23  professionals worked closely with the Debtor's management in preparing the papers

24  necessary in order to obtain authorization to use cash collateral, responding to the

25  oppositions of Wachovia to such use, preparing for the hearings conducted by the Court

26  in this case with regard to use of cash collateral, and participating in discussions and

27  negotiations with Wachovia and its two sets of counsel.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1    At the initial interim hearing regarding use of cash collateral conducted on

2    March 21, 2008.  The Court authorized the Debtor's use of cash collateral over the

3    opposition of Wachovia.  The Debtor engaged in significant discussions and negotiations

4    with Wachovia regarding continued use of cash collateral, and the Debtor's management,

5    bankruptcy counsel, and financial advisor worked together in preparing for an initial

6    continued cash collateral hearing held by the Court on March 25, 2008.  Once again,

7    Wachovia opposed the Debtor's use of cash collateral and the Debtor obtained the

8    Court's approval of the continued use of cash collateral pending a further hearing set for

9    April 17, 2008.  Thereafter, the Debtor engaged in continuous discussions with Wachovia

10   and addressed various issues raised by Wachovia prior to the April 17, 2008 continued

11   cash collateral hearing.  While the negotiations were extensive and various issues were

12   addressed and resolved, Wachovia nonetheless filed objections to the Debtor's continued

13   use of cash collateral prior to the April 17, 2008 hearing.  At the April 17, 2008 hearing,

14   the Court again authorized the Debtor's continued use of cash collateral through the date

15   of a continued cash collateral hearing scheduled for June 24, 2008.

16       Between the April and June cash collateral hearings, the Debtor continued

17   to engage in extensive discussions and negotiations with Wachovia (during that period

18   Wachovia replaced its prior-counsel with new counsel) regarding ongoing use of cash

19   collateral, store closing sales by the Debtor, the Debtor's plan to move forward with a

20   going concern sale of the Debtor's business and related assets, the Debtor's retention of

21   an investment banker to assist in the effort to sell the Debtor's business as a going

22   concern, and various related matters.  Ultimately, after significant negotiations, an

23   agreement with Wachovia was reached regarding continued use of cash collateral and

24   this agreement was approved by the Court at the June 24, 2008 cash collateral hearing.

25   At that time, the Court authorized the Debtor's continued use of cash collateral in order to

26   allow the Debtor the opportunity to achieve a going concern sale through July 22, 2008,

27   at which time a further cash collateral hearing was set to take place, if necessary.  Such a

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  hearing was not necessary because the Debtor succeeded in consummating a going

2  concern sale and was able to pay Wachovia off in full from the sale proceeds.

### c.    Store Closing Sales

4        The Debtor's unprofitable stores and operations required the Debtor close

5  certain stores and conduct store closing sales prior to the Sale to TRS.  The Debtor

6  presented the pleadings and other documents needed in order to obtain Court

7  authorization to conduct store closing sales.  Negotiations were conducted with the

8  Debtor's landlords resolving all objections to the protocol for conducting store closing

9  sales.  The Debtor filed four sets of store closing sales/store closing motions, which were

10 granted by the Court on March 25, 2008, May 12, 2008, May 28, 2008, and June 6, 2008,

11 in order for the Debtor to have the flexibility to close those stores necessary in order to

12 avoid even greater losses from the Debtor's ongoing operations and at the same time

13 preserve the opportunity to maximize value through a reorganization and/or going

14 concern sale of the Debtor's business and related assets.

### d.    Sale Of Assets Of Estate

16       In June 2008, the Debtor filed a motion for approval of the sale of its

17 business and substantially all of its assets (the "Sale Approval Motion") and concurrently

18 filed a motion for approval of sale procedures (the "Sale Procedure Motion").  Under the

19 Sale Approval Motion, the Debtor sought Court approval of a sale of substantially all of

20 the assets of the Debtor to TRS Acquisition Subsidiary, Inc. (the "Purchaser" or "TRS"),

21 for $5,500,000 (subject to adjustment to the extent the Debtor's inventory at cost was

22 less than $5,100,000 at the time of the closing of the sale), plus the Purchaser did not

23 acquire and the estate retained cash, accounts receivable and credit card reserves in the

24 approximate sum of $500,000.  The Debtor also sought, pursuant to the sale, to assume

25 and assign 11 retail store locations to Purchaser.  The Court granted the Sale Approval

26 Motion pursuant to an Order entered on July 16, 2008.  The sale (the "Sale") to TRS

27 closed on July 21, 2008, with the Purchaser wiring the Debtor $5,024,468 on that date.

28 Additionally, the Debtor's estate retained cash as of the closing date in the sum of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   $471,530, and retained the right to recover the approximate $500,000 held as reserves

2   by the Debtor's credit card merchant processors.  From the sale proceeds, Wachovia's

3   claim against the Debtor as paid in full through a wire transfer in the sum of $1,669,875

4   made by the Debtor to Wachovia.  Further, postpetition trade creditor obligations of the

5   Debtor have been paid.

6          Under the Sale, leases for 11 retail store locations were assumed and

7   assigned to the Purchaser and it was contemplated that TRS would continue to operate

8   the Debtor's following stores on a go-forward basis:  Newport Beach, Bellevue Square,

9   Kierland Commons, Manhattan Beach, Cherry Creek, Sherman Oaks, Santa Monica,

10  Valley Fair, Burlingame, Scottsdale, and Cadeau New York.  These 11 stores included all

11  of the Debtor's stores with respect to which the Court had not previously authorized the

12  Debtor to conduct store closing sales.  Moreover, one of the advantages of the Sale

13  compared to other offers received by the Debtor, was that the Sale maximized the

14  number of stores that could continue in operation, minimized the number of rejected

15  leases and the amount of lease rejection damage claims, and likely minimized the

16  number of employees of the Debtor whose jobs would be lost.

17          **e.    Assignment of Real Property Leases**

18          As of the Petition Date, eStyle was the lessee (or the assignee of the lessee

19  in the instance of 2 Cadeau leases) of 23 retail store locations in nine states.  These retail

20  locations were a mixture of street, lifestyle center, regional and local mall spaces.  eStyle

21  also leased its business headquarters in downtown Los Angeles.

22          eStyle's retail store locations, at the time its chapter 11 case was

23  commenced, included the following:

24

25

| Store | Square Feet | Open Date | Whether Assigned (A) or Rejected (R) | Lease Termination Date Under the Lease |
|---|---|---|---|---|
| Manhattan Beach | 2,158 | Nov. - 02 | A | Nov. 2012 |
| Newport Beach | 3,364 | May – 03 | A | May 2013 |

28

| | | | | | |
|---|---|---|---|---|---|
| 1 | Santa Monica | 2,000 | Nov. – 03 | A | Oct. 2008 |
| 2 | Burlingame | 2,652 | Dec. – 03 | A | Dec. 2008 |
| 3 | Mission Viejo | 2,683 | Aug. – 04 | R | Jan. 2015 |
| 4 | Sherman Oaks | 2,716 | Nov. – 04 | A | Jan. 2015 |
| 5 | Kierland Commons | 2,323 | Nov. – 04 | A | Nov. 2014 |
| 6 | Scottsdale | 2,565 | Nov. – 04 | A | Jan. 2015 |
| 7 | Barton Creek | 3,633 | Mar. – 05 | R | Jan. 2016 |
| 8 | Westchester | 2,843 | Mar. – 05 | R | Jan. 2016 |
| 9 | West Farms | 2,404 | Apr. – 05 | R | Jan. 2016 |
| 10 | Atrium | 3,436 | May – 05 | R | Jan. 2016 |
| 11 | Valley Fair | 2,366 | May – 05 | A | Jan. 2016 |
| 12 | Willow Bend | 2,457 | Aug. – 05 | R | Jan. 2016 |
| 13 | Glendale | 3,082 | Aug. – 05 | R | Jan. 2011 |
| 14 | Burlington | 2,861 | Aug. – 05 | R | Jan. 2016 |
| 15 | Roosevelt Field | 2,687 | Oct. – 05 | R | Jan. 2016 |
| 16 | North Park | 2,585 | May – 06 | R | Jan. 2017 |
| 17 | Short Hills | 3,495 | Nov. – 06 | R | Jan. 2017 |
| 18 | Bellevue Square | 2,408 | Aug. – 06 | A | Jan. 2017 |
| 19 | Cadeau New York | 1,500 | Apr. – 06 | A | June 2012 |
| 20 | Cadeau Los Angeles | 2,000 | Apr. – 06 | R | Aug. 2009 |
| 21 | Cherry Creek | 2,444 | Nov. – 07 | A | Jan. 2018 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

As set forth above, pursuant to the Sale, eleven (11) real property leases with respect to the Debtor's retail stores were assumed and assigned to the Purchaser and it was contemplated that the Purchaser would continue with retail operations at eleven (11) of the Debtor's stores, including the following: Newport Beach; Bellevue Square; Kierland Commons; Manhattan Beach; Cherry Creek; Sherman Oaks; Santa

1  Monica; Valley Fair; Burlingame; Scottsdale; and Cadeau New York. All other real

2  property leases under which the Debtor was the Lessee were rejected.

### f.    Global Stipulation

4        The Debtor, the unsecured creditors' committee (the "Committee")

5  appointed in this case, and the remaining secured creditors in this case (Oak Investment

6  Partners, IX, L.P., Oak IX Affiliates Fund, L.P., Oak IX Affiliates Fund-A, L.P., GRP II,

7  L.P., GRP II Partners, L.P., and GRP II Investors, L.P., collectively referred to hereafter

8  as the "Bridge Lenders") reached an agreement following the closing of the Sale and the

9  payoff of Wachovia that serves as the foundation of the Plan. This agreement is

10  embodied in a stipulation (the "Global Stipulation") approved by the Court pursuant to an

11  order entered on November 7, 2008. The Global Stipulation (1) enables the parties to

12  avoid potential litigation in this case, (2) ensures full payment of all priority claims in this

13  case (including, without limitation, priority wage, priority tax, and administrative claims) by

14  the subordination of the Bridge Lenders' secured claims to such payment, and (3)

15  maximizes the opportunity for recovery by general unsecured creditors in this case by

16  allowing the Debtor to move forward with a viable chapter 11 plan subordinating the

17  Bridge Lenders' secured claims to a guaranteed payment of $200,000 to general

18  unsecured creditors holding allowed claims and providing for the potential increase of

19  that guaranteed payment to the extent of any net recoveries on avoidance actions. The

20  Global Stipulation also provides for the (i) allowance of the Bridge Lenders' claims, (ii)

21  interim distribution to the Bridge Lenders' in the sum of $500,000 (this took place in

22  November, 2008), and (iii) other ancillary relief including, but not limited to, approval of

23  the Committee's counsel to pursue Avoidance Claims under the terms in the Global

24  Stipulation.   The Global Stipulation and the Court's order approving the Global

25  Stipulation are collectively attached hereto as Exhibit J.

26        The primary terms of the Global Stipulation include the following:

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    **Allowance of Bridge Lenders' Claims and Interim Distribution.** The

2    Bridge Lenders have an allowed secured claim in this case in the total amount of

3    $2,100,000. The Debtor and the Committee waived and released any and all claims and

4    causes of action, of any kind whatsoever, against the Bridge Lenders and against the

5    directors of the Debtor who were directors as of July 1, 2008, who were Jerry Gallagher,

6    Steve Lebow and Dennis Eck. An interim payment of $500,000 was made to the Bridge

7    Lenders in November, 2008.

8    **Subordination Under the Plan.** Subject to the terms of the Global

9    Stipulation, the Bridge Lenders subordinated their Allowed Secured Claims under the

10    Plan to permit payment in full of (a) all allowed administrative and priority claims

11    (including all claims entitled to priority treatment under section 507 of the Bankruptcy

12    Code), including all allowed professionals' fees and costs, (b) the Guaranteed Payment

13    (as defined below), and (c) the Post-Confirmation Reserve (as defined below).

14    **Subordination to Allow for Guaranteed Payment of General Unsecured**

15    **Claims Under the Plan.** The Bridge Lenders subordinated their allowed

16    secured claims to permit the sum of $200,000 to be set aside for distribution to the

17    holders of allowed general unsecured claims (the "Guaranteed Payment") under the Plan.

18    The Guaranteed Payment shall be increased in the event of any net recoveries on

19    Avoidance Claims (as defined below), as provided below.

20    **Continuance of Existing Subordination Agreement Pending the**

21    **Effective Date of the Plan.** The subordination of the Bridge Lenders'

22    Allowed Secured Claims to the fees and costs of the Debtor's professionals and to fees

23    and costs of the Committee's counsel, in accordance with the terms of the Subordination

24    Stipulation, shall continue through the Effective Date of the Plan following confirmation of

25    the Plan. All reasonable fees and out-of-pocket expenses of such professionals allowed

26    by order of the Bankruptcy Court shall be paid in full. The Bridge Lenders shall not object

27    to the final allowance and payment of the fees for the Debtor's bankruptcy counsel and

28    financial advisor or Committee's counsel in amounts equal to 95% of all fees for services

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    rendered by such professional as set forth in such professionals' invoices and/or fee

2    applications.

3    **Subordination to Post-Confirmation Reserve.** The Bridge Lenders shall

4    subordinate their Allowed Secured Claims to permit a reserve to be established under the

5    Plan in the amount of $50,000 to fund the costs of the wind-down of the eStyle estate

6    following the Effective Date of the Plan (the "Post-Confirmation Reserve"), including,

7    without limitation, all reasonable fees and expenses of the Disbursing Agent under a

8    confirmed Plan, and any professionals working with the Disbursing Agent, including but

9    not limited to the costs associated with the Avoidance Actions ("Post-Confirmation

10    Costs"). The Post-Confirmation Reserve shall not be utilized by the Debtor or any of the

11    Debtor's professionals. The position of the Debtor's Responsible Officer shall terminate

12    on the Effective Date of the Plan.

13    **Avoidance Claims.** All Bankruptcy Code Chapter 5 claims and causes of

14    action ("Avoidance Claims") of the Debtor's estate shall be preserved under the Plan for

15    the benefit of unsecured creditors of the Debtor. The Guaranteed Payment will be

16    increased by an amount, if available, equal to all recoveries on any Avoidance Claims

17    after payment of any unpaid Post-Confirmation Costs and fees (as described below).

18    The Committee shall continue to serve after Confirmation of the Plan and shall have sole

19    authority to pursue, prosecute and settle any and all Avoidance Claims.[1] The Committee,

20    in its sole discretion, will decide on Avoidance Claims to be pursued, if any. The

21    Committee counsel shall pursue Avoidance Claims, if any, on a contingency fee basis

22    which, subject to Bankruptcy Court approval, shall be 33% of the gross recovery against

23    each defendant if resolved before trial and 40% of the gross recovery against each

24    defendant if a matter settles within 30 days of the first date set for trial. As provided

25    above, the estate shall reimburse Committee counsel for all costs related to the

26    _____

27    [1] Committee's counsel shall pursue the Avoidance Claims on behalf of a post-
confirmation Committee and/or a disbursing agent/liquidating trustee.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Avoidance Claims.  Committee counsel shall not seek or be entitled to any payment,

2   based on hourly services, from the Debtor's estate with regard to fees (except for costs)

3   relating to avoidance claims for services rendered after January 1, 2009.

4

5            The Court has approved the employment of the following professionals:

6            **General Bankruptcy Counsel.**

7            **Sulmeyer**Kupetz ("SK"), a professional corporation, has served throughout

8   this case and continuing to serve as general bankruptcy counsel to the Debtor.  SK was

9   engaged by eStyle in or around March 2008, and provided the Debtor with restructuring,

10  insolvency and bankruptcy legal advice and representation prior to and following the

11  commencement of the Debtor's chapter 11 case.  SK has extensive experience and

12  expertise in restructuring, reorganization, bankruptcy and other insolvency matters.

13  Shortly following the commencement of the Debtor's chapter 11 case, the Debtor

14  submitted an application requesting that the Court approve the Debtor's retention of SK

15  as general bankruptcy counsel and the Court approved the application.

16           **Special Corporate Counsel.**

17           Baer & Troff, LLP ("B&T"), was retained pursuant to an order of the Court

18  as special corporate counsel to the Debtor.  B&T provided the Debtor with legal advice

19  regarding general corporate and business issues and matters.  Following the closing of

20  the Sale, the Debtor, the Bridge Lenders, and the Committee stipulated and the Court

21  approved the appointment of Jim Baer, a partner in B&T, as the "Responsible Officer" for

22  the Debtor to replace the Debtor's prior management and fulfill the role of management of

23  the debtor in possession in this case.  As of July 31, 2008, B&T ceased its representation

24  of the Debtor as special corporate counsel.

25

26           **Financial Advisor.**

27           Kibel Green, Inc. ("KGI"), was retained by the Debtor pursuant to an order

28  of the Court as the Debtor's financial advisor in this case.  KGI provided the Debtor with

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   financial advisory services that were, among other things, instrumental in connection with

2   the Debtor's ability to obtain use of cash collateral over the objection of Wachovia and the

3   Debtor's ability to ultimately consummate the going concern sale transaction.

4         **Investment Banker.**

5         Alexander B. Kasdan Company Limited ("ABKC"), was employed pursuant

6   to Court order as the Debtor's investment banker.  ABKC was paid from the proceeds of

7   the Sale and its representation of the Debtor ceased at the time the Sale closed.

8         **Accountant.**

9         Pursuant to Court approval obtained following the closing of the Sale, the

10  Debtor employed Crowe Horwath LLP ("CH"), known at the time as Grobstein Horwath &

11  Company LLC, as its accountants.  CH replaced the Debtor's financial advisor (KGI) to

12  assist the Debtor with accounting, tax, and/or reporting matters, including any and all

13  other financial matters through the conclusion of confirmation of the Plan.  CH shall

14  further assist the Committee with any and all financial, accounting, tax, and/or reporting

15  needs, including but not limited to assisting with the financial and accounting aspects with

16  respect to Avoidance Claims, if necessary.  The Plan provides that CH shall serve as

17  Disbursing Agent under the Plan, unless the confirmation Order provides otherwise.

18        **Unsecured Creditors' Committee – Employment of Counsel.**

19        Pursuant to a notice dated April 10, 2008, the United States Trustee

20  appointed the following five persons to serve on a committee of creditors holding

21  unsecured claims against the Debtor (the "Committee"):  (1) Ronald M. Tucker, Vice

22  President/Bankruptcy Counsel for Simon Properties; (2) Steven Sass, The Receivable

23  Management Services Corp., agent for United Parcel Service; (3) Jepelte Zayco,

24  Controller, Splendid Littles; (4) Edward Ruzzo, credit manager, McClaren USA; and (5)

25  Michael Sherman, Chief Executive Officer, Direct Marketing Solutions.  The Committee

26  retained the law firm of Landsberg Margulies LLP as its counsel pursuant to an order of

27  the Court.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Currently, the following significant adversary proceedings and motions are

2    still pending:  none.

3    **2.    Other Legal Proceedings**

4    In addition to the proceedings discussed above, the debtor is currently

5    involved in the following nonbankruptcy legal proceedings:  none.

6    **3.    Actual and Projected Recovery of Preferential or Fraudulent**

7    **Transfers**

8    The Official Committee of Unsecured Creditors (the "Committee") has been

9    engaged to pursue preferential or fraudulent transfer claims (the "Avoidance Claims").  All

10    of the information contained in this section of the Disclosure Statement has been

11    provided to the Debtor by the Committee and solely represents the views of the

12    Committee.

13    The Committee asserts that there is approximately $9,427,338 in

14    Avoidance Claims to both insiders and non-insiders.  The Avoidance Claims essentially

15    comprise of 2 categories:  (i) Inventory Preference Claims, and (ii) Non-Inventory

16    Preference Claims.  The "Inventory Preference Claims" equal approximately $3,781,397

17    in payments by the Debtor within 90 days of the Petition Date to non-Insiders entities or

18    individuals that provided inventory and/or trade related goods to the Debtor (e.g., clothing

19    and other merchandise to be sold by the Debtor).   Attached to the Plan as Exhibit "L" is a

20    summary of these potential Inventory Preference Claims.

21    The "Non-Inventory Preference Claims" include both Insider and non-

22    Insider claims.  Relating to the non-Insiders, there are approximately $4,421,776 in

23    payments by the Debtor to entities or individuals that provided non-inventory related

24    goods or services to the Debtor (e.g., professional services, lessors, utilities, insurance,

25    etc.).   Attached to the Plan as Exhibit "M" is a summary of these potential Inventory

26    Preference Claims.  The Insiders received payments during the one year period prior to

27    the Petition Date in the approximate sum of $1,224,175.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Section 547(c) of the Code provides various affirmative defenses to claims

2  arising under 11 U.S.C. § 547 of the Code.  The entities subject to Inventory Preference

3  Claims filed proofs of claim in the approximate sum of $570,593, while the entities subject

4  to Non-Inventory Preference Claims filed proofs of claim in the approximate sum of

5  $2,078,492.  These proofs of claim may be indicative of new value that was provided by

6  the claimants to the Debtors, among other affirmative defenses that may be available

7  under § 547, to offset recoveries of the Avoidance Claims.  Actual recoveries from the

8  Total Preference Claims for the benefit of the Bankruptcy Estate may differ based upon

9  the resolution of the Avoidance Claims.

10    Exhibits "L" and "M" to the Plan reflect the recipients of transfers (the

11  "Transferees") made within the 90 day (or 1 year) period prior to the Petition Date.  As set

12  forth above, the Committee may commence adversary proceedings against all or certain

13  of the Transferees pursuant to FRBP 7001 in order to avoid and recover payments

14  avoidable under 11 U.S.C. §§ 547-550 (the "Preferential Transfers" ).  Nothing herein

15  shall be deemed to be an admission by any of the transferees of having received a

16  Preferential Transfer.  To the extent these Preferential Transfers are avoided and

17  recovered, the Transferees may have a resulting unsecured claim in the estate

18  ("Resulting Claim").  Accordingly, the Committee has filed with the Bankruptcy Court a

19  Motion for Order Estimating the Resulting Claims for Plan Voting Purposes Only

20  Pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Estimation

21  Motion").   The Estimation Motion seeks a court order to temporarily allow the

22  Transferees with the Resulting Claims for the sole purpose of voting for or against the

23  Plan in an amount which the Court deems proper.  The Court may temporarily allow the

24  respective Transferees' Resulting Claims in addition to any other Claims these

25  Transferees may have within these bankruptcy proceedings.  The Transferees should

26  consult their own independent counsel for their rights and remedies as it may relate to

27  voting for or against the Plan.

28    **4.    Procedures Implemented to Resolve Financial Problems**

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    To attempt to fix the problems that led to the bankruptcy filing, Debtor

2  implemented the following procedures:  the Debtor closed its lease profitable stores and

3  conducted store closing sales at these stores, and solid its remaining business operation

4  as a going concern.  Additionally, the leases of eleven (11) retail stores were assumed

5  and assigned to the Purchaser.  Consummation of the Sale to the Purchaser was an

6  extremely good result for the Debtor's estate under the circumstances.  As a result of the

7  closing of the Sale, the estate received on July 21, 2008, a cash payment from the

8  Purchaser in the sum of $5,024,468.  Additionally, the estate retained cash in the sum of

9  $471,550, and retained the right to recover reserves held by the Debtor's credit card

10  merchant processors (anticipated to be recovered in the next 30-90 days) in the

11  approximate sum of $500,000.  Additionally, the Purchaser assumed the obligation to pay

12  $200,000 of post-petition payables.  Moreover, the Sale of the Debtor's business as a

13  going concern minimized the loss of jobs for the Debtor's employees and also minimized

14  claims that otherwise might have been asserted by real property lessors and parties to

15  executory contracts with regard to the rejection of real property leases and executory

16  contracts.  In accordance with this Sale to the Purchaser, the Debtor assumed and

17  assigned to the Purchaser 11 retail store real property leases.

18    **5.    Current and Historical Financial Conditions**

19    eStyle generated total revenues of approximately $49.2 million for the year

20  ended January 26, 2008, and $48.2 million for the year ended January 27, 2007.  The

21  Debtor, however, historically incurred substantial losses and negative cash flows from

22  operations as its growth strategies evolved.  For the year ended January 26, 2008, eStyle

23  incurred a net loss of approximately $10.4 million and negative cash flows from

24  operations of $11.4 million.  For the year ended January 27, 2007, eStyle incurred a net

25  loss of approximately $9.8 million and negative cash flows from operations of $6.7

26  million.  During the Debtor's chapter 11 case, the sale results for ongoing stores were

27  below what was projected.  Moreover, there was a material risk that the Debtor would run

28  short or out of funds in July 2008.  Accordingly, it was imperative that a sale process

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   move forward and conclude on an expedited basis in order to avoid potentially irreparable

2   harm to the value of the estate and the opportunity for recovery by creditors.

3        As a result of the Sale, the Debtor no longer has any business operations.

4        The identity and fair market value of the estate's assets are listed in Exhibit

5   A.  See also the Debtor's financial history set forth in Exhibit B.

6                    III.

7   **SUMMARY OF THE PLAN OF REORGANIZATION**

8   **A.**  **What Creditors and Interest Holders Will Receive Under The Proposed**

9   **Plan**

10       As required by the Bankruptcy Code, the Plan classifies claims and

11  interests in various classes according to their right to priority.  The Plan states whether

12  each class of claims or interests is impaired or unimpaired.  The Plan provides the

13  treatment each class will receive.

14      **B.**  **Unclassified Claims**

15       Certain types of claims are not placed into voting classes; instead they are

16  unclassified.  They are not considered impaired and they do not vote on the Plan

17  because they are automatically entitled to specific treatment provided for them in the

18  Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following claims in a class.

19      **1.**  **Administrative Expenses**

20       Administrative expenses are claims for costs or expenses of administering

21  the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2).  The

22  Code requires that all administrative claims be paid on the Effective Date of the Plan,

23  unless a particular claimant agrees to a different treatment.

24       The following chart lists <u>all</u> of the Debtor's § 507(a)(2) unpaid administrative

25  claims and their treatment under the Plan (see Exhibit F for detailed information about

26  each administrative expense claim).  These amounts are current estimates and may be

27  lesser or greater than projected.  <u>See also</u> Exhibit K hereto (including accompanying

28  notes) for greater detail:

| Name | Estimated Unpaid Amount Owed As Of Effective Date | Treatment |
|---|---|---|
| James K. Baer | $0.00 | Paid in full on Effective Date |
| Crowe Horwath LLP | $125,304.75 | Paid in full on Effective Date |
| **Sulmeyer**Kupetz | $50,000 | Paid in full on Effective Date |
| Landsberg Margulies | $0.00 | Paid in full on Effective Date |
| Sobul Primse & Schenkel (Closing of 401(k) Plan) | $15,000 | Paid in full on Effective Date |
| Baer & Troff | $0.00 | Paid in full on Effective Date |
| Clerk's Office Fees | $0.00 | Paid in full on Effective Date |
| U.S. Trustee fees | $9,750.00 | Paid in full on Effective Date |
| Reclamation Claims under 503(b)(9) | $85,950.78 | Paid in full on Effective Date |
| Dream International U.S.A., Inc. | $72,272.64 | Paid in full on Effective Date |
| **TOTAL** | **$358,278.17** | |

Court Approval of Fees Required:

   The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

   As indicated above, the Debtor will need to pay $358,278.17 worth of administrative claims on or before the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtor will have an estimated $1,497,288.60 in cash on hand on the Effective Date of the Plan. The source of this cash will be the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   proceeds from the Sale, as well as funds recovered from (1) American Express, (2) the

2   landlord of the Cherry Creek store, (3) Hilldun Corporation, and (4) the return of

3   payments to counsel to the Committee in excess of their billed amount of work.

4           **2.**     **Priority Tax Claims**

5           Priority tax claims are certain unsecured income, employment and other

6   taxes described by Code Section 507(a)(8).  The Code requires that each holder of such

7   a 507(a)(8) priority tax claim receive regular installment payments in cash of a total value,

8   as of the effective date of the plan, equal to the allowed amount of the claim, over a

9   period ending not later than 5 years after the date of the commencement of the case, and

10  in a manner not less favorable than the most favored nonpriority unsecured claim

11  provided for by the plan.

12          The following chart lists all of the Debtor's Section 507(a)(8) priority tax

13  claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • Name = CA State Board of Equalization<br>• Type of tax = property<br>• Date tax assessed = 9/12/08 | $11,579.54 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = City and County of Denver/Treasury<br>• Type of tax = personal property, sales, use and occupational<br>• Date tax assessed = 6/30/08 | $16,272.70 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = City of Phoenix, Arizona<br>• Type of tax = license, sales and use<br>• Date tax assessed = 4/17/08 | $2,859.51 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Colorado Dept. of Revenue<br>• Type of tax =<br>• Date tax assessed = 4/25/08 | $5,289.20 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Colorado Dept. of Revenue<br>• Type of tax =<br>• Date tax assessed = 6/30/08 | $7,840.69 | Paid in full on Effective Date, or as soon thereafter as practicable |

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| • Name = Commonwealth of Mass. Dept. of Revenue<br>• Type of tax =<br>• Date tax assessed = 5/22/08 | $8,400.18 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Connecticut Dept. of Revenue Taxpayer Services Division<br>• Type of tax = corporation, sales and use<br>• Date tax assessed = 7/1/08 | $4,078.78 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = County of San Bernardino, Treasurer-Tax Collector<br>• Type of tax =<br>• Date tax assessed = 9/30/08 | $642.34 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = County of Santa Clara, Tax Collector<br>• Type of tax = personal property<br>• Date tax assessed = 7/9/08 | $5,802.23 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Dallas County<br>• Type of tax = Texas property tax<br>• Date tax assessed = 6/2/08 | $6,760.42 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Farmington Tax Collector<br>• Type of tax =<br>• Date tax assessed = 7/7/08 | $4,926.10 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = L.A. County Treasurer and Tax Collector<br>• Type of tax = property<br>• Date tax assessed = 10/2/08 | $15,129.44 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = New York State Dept. of Taxation & Finance<br>• Type of tax =<br>• Date tax assessed = 10/4/08 | $56,461.44 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Orange County Tax Collector<br>• Type of tax =<br>• Date tax assessed = 5/28/08 | $5,391.53 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = San Mateo County Clerk<br>• Type of tax =<br>• Date tax assessed = 5/5/08 | $5,701.11 | Paid in full on Effective Date, or as soon thereafter as practicable |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

| | | |
|---|---|---|
| • Name = State of Arizona, Dept. of Revenue<br>• Type of tax =<br>• Date tax assessed = 5/5/08 | $120,958.05 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = State Board of Equalization, Sacramento CA<br>• Type of tax =<br>• Date tax assessed = 6/18/08 | $87,751.28 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = State of new Jersey Division of Taxation Compliance Activity<br>• Type of tax =<br>• Date tax assessed = 5/2/08 | $13,898.85 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Travis County<br>• Type of tax = property<br>• Date tax assessed = 4/25/08 | $4,522.39 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Washington State Dept. of Revenue<br>• Type of tax = sales and business<br>• Date tax assessed = 5/27/08 | $22,458.67 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Washington State Dept. of Revenue<br>• Type of tax = sales and business<br>• Date tax assessed = 9/26/08 | $1,274.32 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = Arizona<br>• Type of tax = TPT<br>• Date tax assessed = 3/11/09 | $43,613.73 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = California<br>• Type of tax = SOS<br>• Date tax assessed = 10/31/08 | $250.00 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = California – City of Los Angeles<br>• Type of tax = Sales<br>• Date tax assessed = 2/11/08 | $886.55 | Paid in full on Effective Date, or as soon thereafter as practicable |
| • Name = California – State Board of Equalization<br>• Type of tax = Sales<br>• Date tax assessed = 1/30/09 | $2,170.38 | Paid in full on Effective Date, or as soon thereafter as practicable |